# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America and
State of Michigan,

          Plaintiffs,

v.

W.A. Foote Memorial Hospital,
d/b/a Allegiance Health,

          Defendant.

Case No. 15-cv-12311

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

_____/

## OPINION REGARDING ONGOING JURISDICTION

On June 25, 2015, the United States of America and the State of Michigan brought a civil antitrust action to enjoin allegedly unlawful agreements by defendants Hillsdale Community Health Center ("Hillsdale"), W.A. Foote Memorial Hospital, d/b/a Allegiance Health ("Allegiance"), Community Health Center of Branch County ("Branch"), and ProMedica Health System, Inc. ("ProMedica"). (Dkt. 1.) Plaintiffs allege that the agreements are "naked restraints of trade that are *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 2 of the Michigan Antitrust Reform Act, MCL 445.772." (*Id.* at 3.)

On October 21, 2015, the Court entered an order dismissing defendants Hillsdale, Branch, and ProMedica after those parties ("Settling Defendants") entered into a settlement agreement ("2015 Agreement"). (Dkt. 37.) The 2015 Agreement required the Settling Defendants to "agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint." (Dkt. 36 at 2.) In particular, the Settling Defendants were required to end any and all agreements with other providers that "prohibit[] or limit[] marketing" or "allocate[] any geographic market or territory between or among the Settling Defendant[s] and any other provider[s]." (*Id.* at 7.) Defendant Allegiance did not enter into the 2015 Agreement, and remains the only defendant in this case.

I. **Background**

In their complaint, plaintiffs request a declaratory judgment that "defendants' agreements limiting competition constitute illegal restraints of interstate trade" (Dkt. 1 at 13), and prospective relief including an injunction precluding "defendants and their members, officers, agents, and employees from continuing or renewing in any

2

manner the conduct alleged herein or from engaging in any other conduct, agreement, or other arrangement having the same effect as the alleged violations" (*Id.* at 13–14). They also seek a requirement for defendants "to institute a comprehensive antitrust compliance program to ensure that defendants do not establish any similar agreements and that defendants' members, officers, agents, and employees are fully informed of the application of the antitrust laws to hospital restrictions on competition." (*Id.* at 14.)

The complaint underlying the requested relief derives from allegations of an anti-competitive agreement between Allegiance and former co-defendant Hillsdale. Because the 2015 Settlement required Hillsdale to end any agreement to limit marketing, including any agreement with Allegiance, the Court was concerned that there may no longer be an ongoing controversy at issue in the case. On July 20, 2017, the Court ordered the parties to submit supplemental briefing on the question of whether there is a live case or controversy before the Court. (Dkt. 107.)

In their supplemental brief, plaintiffs argue that (1) the fact that Hillsdale has ended its agreement with Allegiance does not deprive the

3

Court of jurisdiction, as it may still grant effective relief; and (2) extending the reach of the mootness doctrine to cases like this one would have negative policy consequences, including encouraging defendants to hold out from settling. (Dkt. 108 at 6.)

Defendant argues that "to the extent that the alleged unlawful conduct . . . ever occurred (which Allegiance denies), it has long since ceased, and is unlikely to occur in the future." (Dkt. 109 at 1.) Defendant further argues that "[e]ven if the Court chooses to retain jurisdiction over the case at this time, the prospective relief requested by plaintiffs is unnecessary and unwarranted." (*Id.* at 10.)

The Court heard oral argument on the question on October 15, 2017. For the reasons set forth below, the Court concludes that it retains jurisdiction in this case.

**II. Legal Standard**

Federal judicial power is restricted by the Constitution to actual cases or controversies. *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1547 (2016). The mootness doctrine arises from this Article III requirement because an action that is moot cannot be considered a live case or controversy. "[A] case is moot when the issues presented are no longer

4

'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Courts "have a 'continuing obligation' to enquire [sic] whether there is a present controversy as to which effective relief can be granted." *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 458 (6th Cir. 2004) (quoting *Southwest Williamson County Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)).

Federal courts have broad authority to order equitable relief in antitrust cases. *Int'l Salt Co. v. United States*, 332 U.S. 392, 400-01 (1947) (District Courts "are invested with large discretion to model their judgments to fit the exigencies of the particular case."). The goal of an equitable antitrust suit is neither to simply punish past behavior nor to merely end specific illegal practices. *Id.* at 401. The goal is to "effectively pry open to competition a market that has been closed by defendants' illegal restraints." *Id.*

Courts have a wide range of means at their disposal to further this goal. *Fed. Trade Comm'n v. Nat'l Lead Co.*, 352 U.S. 419, 430 (1957) (Courts are "obliged not only to suppress the unlawful practice but to take

5

such reasonable action as is calculated to preclude the revival of the illegal practices.") Finally, "the mootness doctrine inquires into a court's authority to order a remedy, not the likelihood or appropriateness of that remedy under particular circumstances. *In re Androgel Antitrust Litigation*, 2017 WL 2404941 at *4 (11th Cir. 2017).

**III. Analysis**

Plaintiffs argue first that (a) Allegiance's conduct is ongoing, but (b) even if it were not, cessation of unlawful conduct prior to final judgment does not moot a case. (Dkt. 108 at 6.) Plaintiffs concede that the 2015 Settlement resulted in Hillsdale agreeing to "cease any conduct pursuant to the particular agreement with Allegiance alleged in the Complaint." *Id.* They argue, however, that Allegiance has not altered its behavior as it relates to marketing in Hillsdale County. *Id.* Finally, plaintiffs assert that "even if Allegiance were to claim to have voluntarily ceased its anticompetitive conduct, this would not moot the case." (*Id.*)

In the present case, plaintiffs' complaint relates to the illegality of various *agreements* between hospitals to limit their marketing across geographic boundaries. After the 2015 Settlement, however, there is no longer an existing agreement between defendant Allegiance and any

6

other previous co-defendant to limit marketing activities in specific geographic regions. Without an underlying anti-competitive agreement, ongoing unilateral actions (i.e., unilateral marketing decisions) by Allegiance are not statutory violations.

Plaintiffs argue that (a) Allegiance Health's extensive history of executing its marketing plans based on agreements with local competitors, (b) its refusal to admit that any of its previous marketing activity was illegal anticompetitive behavior, and (c) its affirmations that it intends to continue with certain limited marketing strategies is sufficient to give the Court authority to issue injunctive relief "in order to cure the ill effects of the illegal conduct." (Dkt. 108 at 6–7.) However, in the case plaintiffs cite, this proposition applies only "upon a finding of a conspiracy in restraint of trade." *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950). The fact that the Court would have the authority *upon a finding of conspiracy* to order prospective relief aimed at curing the negative effects of earlier illegal behavior does not answer the question of whether the Court has jurisdiction to make the finding of conspiracy in the first place.

Plaintiffs' stronger argument is that "th[e] Court may still grant effective relief." (Dkt. 108 at 10.) "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker v. Nw. Envtl. Def. Ctr*, 568 U.S. 597 (2013) (quoting *Knox v. Serv. Emps. Int'l*, 567 U.S. 298, 307 (2012)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307-08 (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984)).

In this case, as is common in antitrust cases, plaintiffs have made clear that their interest in the case is broader than the "particular agreement between Allegiance and [Hillsdale]." (Dkt. 108 at 10.) Plaintiffs' interest is ensuring a competitive market for health services in and around Hillsdale County. Plaintiffs identified four hospitals allegedly involved in anticompetitive agreements to limit marketing and outreach in a particular geographic region. Three of those hospitals voluntarily entered into a settlement agreement that imposes (a) broad limitations on future opportunities to enter into such agreements and (b) the appointment of an independent compliance monitor.

As plaintiffs argue, "the consent decree entered against [Hillsdale] does not provide critical components of the relief that Plaintiffs seek against Allegiance…[and] this Court has the power to grant an injunction that provides effective relief beyond what is already covered by the consent decree." (*Id.* at 11.) If the Court finds an antitrust violation, it could (a) enter an injunction prohibiting Allegiance Health from entering into or maintaining any agreement to limit marketing in particular geographic areas, or (b) enter an order requiring the appointment of an independent antitrust compliance officer, or (c) authorize the U.S. Department of Justice to conduct intermittent compliance inspections. The fact that there remains "meaningful relief" for the court to fashion indicates that the court retains jurisdiction to decide whether or not it would be appropriate to do so.

As defendant highlights in its supplemental brief, "[a] case might become moot if subsequent events made it *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n, Inc.*, 393 U.S. 199, 203–04 (1968) (emphasis added). In this case, defendant argues (1) that the allegedly unlawful conduct has ceased, and (2) there is no reasonable

9

expectation that an unlawful agreement will occur in the future. (Dkt. 109 at 2 and 5.)

"While a suit to enjoin future illegal action may be moot if it is certain that such violations cannot recur, it is likewise well-established that discontinuance of past illegal practices does not necessarily render moot a controversy over an injunction against similar future actions." *Rubbermaid, Inc. v. F.T.C.*, 575 F.2d 1169, 1172 (6th Cir. 1978). "The crucial question, of course, is to what degree one can be *certain* that the same *or related* practices will not recur." *Id.* (emphasis added).

With respect to defendant's argument that the allegedly unlawful conduct has ceased, given the 2015 Agreement, defendant does not have and cannot enter into an anti-competitive agreement with Hillsdale or any of the other Settling Defendants. However, this is not sufficient to convince the Court that Allegiance is *certain* not to enter into any *related* agreements in the future.

Given this lack of certainty, the mootness doctrine is not applicable to this case at this time. The Court retains jurisdiction, and leaves

plaintiffs to their proofs at trial.

IT IS SO ORDERED.

Dated: December 20, 2017      s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 20, 2017.

    s/Shawna Burns
    SHAWNA BURNS
    Case Manager